## IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| BRIAN R. MOCK, #638077, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:24-cv-01100 |
| | ) | Judge Trauger |
| FRANK STRADA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

### I. Introduction

On July 8, 2024, state inmate Brian Mock filed a pro se civil complaint in state court (Doc. No. 1-1, "the Complaint") against (1) the Tennessee Department of Correction (TDOC) and Commissioner Frank Strada; (2) DeBerry Special Needs Facility (DSNF) Warden James Holloway; (3) Aramark Correctional Services, LLC ("Aramark"); and (4) other individual defendants, including four DSNF officials and one "Aramark Food Staff" employee, Mr. Wayne Gunther. (*Id.* at 4–5.) The Complaint is related to alleged unsanitary food service at DSNF, in particular by Gunther, who allegedly persists in refusing to wear any proper sanitation equipment while serving food in DSNF's East Dining Hall. (*Id.* at 5.)

On September 9, 2024, Defendants Aramark, Gunther, and three other individual defendants who were misidentified in the Complaint as DSNF officials but are in fact employed by Aramark (collectively, "the Aramark defendants") removed the case to this Court and paid the filing fee. (Doc. No. 1.) On September 26, 2024, the plaintiff filed a Response to Notice of Removal (Doc. No. 8), in which he consented to the dismissal of one of the individual defendants

from the case but otherwise opposed the removal of his state-court action to federal court, based on the alleged untimeliness of the Aramark defendants' Notice of Removal.

The Aramark defendants filed an Answer to the Complaint on October 2, 2024 (Doc. No. 10) and a reply to the plaintiff's response in opposition to the removal. (Doc. No. 12.) On October 16 and 28, 2024, the plaintiff filed successive motions "to Amend Civil Complaint Pursuant to Fed.R.Civ.P. Rule 15." (Doc. Nos. 14 and 17.) The motions to amend seek to add defendants employed by TDOC, claiming their liability for a retaliatory beating that the plaintiff allegedly sustained on August 22, 2024, as well as for other actions taken in retaliation for his filing of this action. The Aramark defendants oppose the requested amendments on grounds of futility. (Doc. No. 18.)

## II. Removal Jurisdiction

The case is ripe for an initial review of the Complaint pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A. However, the court must first be assured of its subject-matter jurisdiction under the removal statutes, 28 U.S.C. § 1441 *et seq.* "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). This rule cannot be waived by the plaintiff's agreement to the federal forum, since "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).

The Aramark defendants assert that the court's removal jurisdiction is properly exercised pursuant to 28 U.S.C. §§ 1331 and 1441 *et seq.* (Doc. No. 1 at 1.) Under Section 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution,

laws, or treaties of the United States." 28 U.S.C. § 1331. Removal jurisdiction under Section 1441(b), based on the existence of a federal question, is considered identical in scope to Section 1331. *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006) (citation omitted). Accordingly, for removal of the Complaint to be justified, the Aramark defendants must have demonstrated that this court would have "original jurisdiction . . . arising under" federal law to adjudicate its claims.

The Complaint filed by the plaintiff in Davidson County Chancery Court is styled simply as a "Civil Complaint." (Doc. No. 1-1 at 3.) In naming the defendants sued, it refers to TDOC as being "sued under Color of State Law," and to Aramark as being "sued under Color of State Law as a 'State Actor' under the provisions held in Lucas v. Aramark," a case out of the Western District of Kentucky. (*Id.* at 5); *see Lucas v. Aramark Corr. Food Serv.*, No. CIV.A.3:08CV-P310H, 2010 WL 59194, at *1 n.2 (W.D. Ky. Jan. 5, 2010) (noting that "Aramark has apparently contracted with the State to provide food services to the inmates, and the Court presumes, for the purposes of initial review only, that Aramark in its provision of food services is a state actor"). The Complaint also cites various federal cases in support of the point that Aramark is properly sued by prison inmates despite the fact that it is "privately-owned" and not a normal "commercial kitchen." (Doc. No. 1-1 at 7.) These descriptions and citations evoke 42 U.S.C. § 1983, the standard vehicle for prisoners' federal constitutional claims against state officials and local governments/officials.

However, the Complaint does not explicitly refer to Section 1983 as the vehicle for the instant action; it only refers to Section 1983 in describing other lawsuits which have upheld attempts to attach liability to Aramark even "[t]hough it's a privately-owned company." (Doc. No. 1-1 at 7.) Nor does the Complaint claim the violation of specific federal constitutional or statutory rights. To be sure, there are stray references to inmates being put in the "unconstitutional situation"

of having to either refuse food or "eat in an unclean and unsanitary environment" (*id.* at 6), and to

Aramark's refusal to "do the honorable and constitutional thing and fix the problems." (*Id.* at 7.)

But the Aramark defendants proclaim that the plaintiff "brings claims under the Eighth

Amendment to the United States Constitution, 42 U.S.C. § 1983, and additional state-law claims."

(Doc. No. 1 at 2 ¶ 3.) This is simply not the case. In fact, the state-law claims are the *only* claims

explicitly asserted in the Complaint, as discussed below. A complaint that merely refers to Section

1983 in connection with state-law claims "does not state a claim for violation of any federal rights

and, accordingly, does not establish a basis for federal question jurisdiction." *Fulmer-Steward v.*

*City of San Antonio*, No. SA-24-CV-00942-XR, 2024 WL 4554088, at *2 (W.D. Tex. Oct. 21,

2024) (citing *Singh v. Duane Morris LLP*, 538 F.3d 334, 337–38 (5th Cir. 2008)).

For its first claim, the Complaint invokes a Tennessee statute applicable to officers and

other employees at state prisons, as follows:

> By the refusal of Mr. Gunther to wear proper sanitation equipment, Cpl. S.
> Banks['s] refusal to enforce policy and/or the rulings of her office as well as
> Warden Holloway's office is clear and direct misconduct of office … under
> Tennessee Code Annotated § 41-1-103. … By allowing this to continue even after
> so many attempts to bring this issue to the attention of the administration here at
> DSNF this also makes Warden James Holloway, Commissioner Frank Strada, Food
> Service Director Prissillia Kam, and DSNF Compliance Manager Leslie
> Kopischke, liable for the actions and misconduct of Mr. Wayne Gunther, Cpl. S.
> Banks, and Mr. Steven Scott. This is very clearly "MISCONDUCT OF OFFICE"
> under TCA § 41-1-103.

(Doc. No. 1-1 at 5.) The Complaint next claims that the allegedly unsanitary food service

conditions at DSNF are in violation of the accreditation provisions of "the American Correctional

Association Stand[ards] 4-4160, 4-4314 through 4-4325, and 4-4329," as well as constituting

"violations of TDOC policy." (*Id.* at 6.) It claims that the DSNF defrauded the American

Correctional Association when it "staged" the DSNF food service environment for its annual

inspection, in order to "receive accreditation and funding." (*Id.*) Based on this staging, the

4

Complaint claims that DSNF "willfully committed [e]mbezzlement from both the ACA and the Federal Government." (*Id.*) Finally, the Complaint claims that the Aramark defendants are not properly monitored by "the Administration" for compliance with their food-services contract with TDOC, and that as a result, Aramark may only be held accountable for breaching that contract (or for liquidated-damages penalties under the contract) when prisoner grievances are upheld at certain benchmark percentages. (*Id.*) Because those benchmarks are not met, Aramark is not held to its contractual food-service obligations, but only to its contractual obligation to provide adequate staffing for food service at TDOC prisons—an obligation that is itself only enforced because TDOC bears the burden of covering for a staffing shortfall. (*Id.*) Otherwise, Aramark operates with impunity because of its contractual monopoly over "food services, inmate personal property package orders, and commissary." (*Id.* at 6–7.)

The Complaint concludes by alleging that the failure of "TDOC, DSNF Staff and its Administration . . . to uphold proper sanitation and policies" has caused the plaintiff's mental health to suffer. (*Id.* at 7–8.) As relief, it seeks injunctive orders that would (1) require or encourage proper regard for "sanitation protocol" and compel the defendants to bring their food services in line with "the policies set forth for such by TDOC and the Tennessee Department of Health"; and (2) require the defendants to report compliance with such state policies and to undergo further auditing of their compliance efforts. (*Id.* at 8.) Finally, the Complaint seeks nominal compensation for the plaintiff's emotional injuries and litigation costs. (*Id.*)

Violations of rights conferred by state contracts or policies such as those alleged above generally do not give rise to a federal claim. *See Vision Real Est. Inv. Corp. v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:18-CV-00014, 2020 WL 4530878, at *4–6 (M.D. Tenn. Aug. 6, 2020) ("Courts have regularly rejected attempts to convert a breach of contract claim into a

constitutional due process claim, particularly when the 'only basis for federal jurisdiction is that a state actor is one of the contracting parties.'") (quoting *Ramsey v. Bd. of Ed. of Whitley Cnty.*, 844 F.2d 1268, 1273 (6th Cir. 1988)). The plaintiff does not claim a federal violation in his Complaint, but only in his supporting brief, where he argues that, in addition to constituting violations of state contracts and policies, the alleged "unsanitary conditions in the East dining hall here at DSNF clearly constitute[] an Eighth Amendment[] [v]iolation." (*Id.* at 58.) But the jurisdictional inquiry is limited to an examination of what is "presented on the face of the plaintiff's properly pleaded complaint"—it does not consider what might be argued in a supporting legal brief. *Eastman*, 438 F.3d at 550 (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). Removal of a case involving non-diverse parties is only proper in "those cases in which a well-pleaded Complaint establishes either that federal law creates the cause of action or that the plaintiff[']s right to relief necessarily depends on resolution of a substantial question of federal law." *Id.* (citation omitted). As set out above, the Complaint in this case does not invoke federal law or seek redress for the violation of any federal right. And of course, prison conditions that create the "unconstitutional situation" referred to in the Complaint (Doc. No. 1-1 at 6) could just as easily be claimed to violate the relevant provisions of the Tennessee Constitution as the U.S. Constitution's Eighth Amendment. *See Grubbs v. Bradley*, 552 F. Supp. 1052, 1125 (M.D. Tenn. 1982) (finding "the standards applicable to conditions of confinement by virtue of the Eighth Amendment . . . equally applicable to both of the relevant provisions of the Tennessee Constitution," Article I, Sections 16 and 32).

Having decided to file this action within the broad expanse of chancery jurisdiction, *see In re Baby*, 447 S.W.3d 807, 838 (Tenn. 2014) ("Trial courts of general jurisdiction include circuit and chancery courts."), and as the master of his Complaint, it was up to the plaintiff "to decide

what law he [would] rely upon," state or federal, in prosecuting the matter. *Eastman*, 438 F.3d at

550 (quoting *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913)). The mere fact that

his unsanitary-food-service claim could have been "stated under federal law does not prevent him

from stating it under state law only." *Id.* (citing *Alexander v. Electronic Data Sys. Corp.*, 13 F.3d

940, 943 (6th Cir. 1994)). Moreover, to the extent that the Complaint's allegations and citations

create some doubt with regard to whether its claims arise under federal law, such doubts must be

resolved in favor of remand. *Id.* (citations omitted). And to the extent that doubts are created by

subsequent amendments of (or attempts to amend) the Complaint, such amendments are not to be

factored into the determination of subject-matter jurisdiction, which the court must make "by

examining the complaint as it existed at the time of removal" and nothing else. *Id.* at 551 (quoting

*Harper v. AutoAlliance Int'l., Inc.*, 392 F.3d 195, 210 (6th Cir. 2004)).

Examination of the Complaint in this case reveals that the plaintiff seeks to establish (1)

that Aramark and its employees are suable in state court, just as they are in federal court, because

of Aramark's prison food-services contract with the State of Tennessee, and (2) that the Aramark

defendants and the defendants employed by the State should be held liable for their failure to

provide meals under sanitary conditions, in keeping with their obligations under the food-services

contract and the TDOC policies in place at DSNF. Had the plaintiff chosen to file the Complaint

in this court, it likely would have been liberally construed in his favor as asserting an Eighth

Amendment claim under Section 1983. But because he chose to file in state court without explicitly

pleading a federal claim, a strict construction of the removal statute is in order, with "all doubts

resolved in favor of remand." *Eastman*, 438 F.3d at 550 (quoting *Brown v. Francis*, 75 F.3d 860,

864–65 (3d Cir. 1996)). Accordingly, this court lacks subject-matter jurisdiction over this case. Its

removal was thus improper.

**III. Conclusion**

As discussed above, the court lacks jurisdiction over this removed action. Pursuant to 28 U.S.C. § 1447(c), the action is **REMANDED** to the Chancery Court for the State of Tennessee, Twentieth Judicial District, Davidson County. All pending motions are **DENIED** as moot.

As required by Section 1447(c), the Clerk **SHALL** mail a certified copy of this Memorandum and Order to the Chancery Court Clerk.

This case in this court is closed.

It is so **ORDERED**.

_____
Aleta A. Trauger
United States District Judge